UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| LESLIE V. WELDON, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:13-cv-402 |
| ) | |
| v. ) | Honorable Phillip J. Green |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | **OPINION** |
| ) | |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On June 21, 2010, plaintiff filed his applications for benefits, alleging an August 1, 2008, onset of disability.[1] (A.R. 124-27). Plaintiff's claims were denied on initial review. On May 19, 2011, plaintiff received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 32-65). On July 8, 2011, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 16-26). The Appeals Council denied review on February 11, 2013 (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, July 2010 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 10). Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The ALJ "erred at the first half of Step Three by failing to consult a medical expert before determining the claimant's combined impairments did not equal the intent of Listing 1.04A."

2. The ALJ "erred at Step Three by failing to specifically articulate a reason for discounting claimant's testimony."

3. The ALJ "erred at Step Three by failing to properly evaluate" Mark Meyer's opinion.

4. The ALJ "impermissibly played doctor" by concluding that the plaintiff could "sustain the exertional and manipulative demands of work activity without consulting a medical expert."

(Plf. Brief at 11, 16, 19, 22, docket # 11).[2] The Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is

---

[2] On June 25, 2013, the court entered its order establishing the schedule and page limitations for the briefs in this case. (docket # 9). The order expressly stated that "[i]nitial briefs may not exceed 20 pages without leave of court" and that reply briefs are "not to exceed five pages." (*Id.*). Plaintiff filed a 24-page initial brief without first obtaining leave of court, and later compounded the error by filing a reply brief which was more than twice the length permitted under the court's order. Plaintiff's attorney is advised that, in any future brief that he files, all pages beyond an applicable page limitation will be disregarded.

defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability on August 1, 2008, through the date of the ALJ's decision. (A.R. 18). Plaintiff had not engaged in substantial gainful activity on or after August 1, 2008. (A.R. 18). Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, status post one cervical and two lumbar surgeries and carpal tunnel syndrome. (A.R. 18). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 19). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry a maximum of 10 pounds occasionally and frequently; can stand and/or walk about 6 hours in an 8 hour work day; and sit about 6 hour[s] in an 8 hour work day. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but he must never climb ladders, ropes or scaffold[s]. The claimant can never lift overhead. He is restricted from working in hazardous environments, such as driving or operating moving machinery, working at unprotected heights, near flames or large bodies of water, or where he could be exposed to unguarded, hazardous machinery. The claimant is limited to jobs that do not require considerable or extensive writing; he can perform fine and gross manipulation frequently, but not constantly; he is not to use his hands to torque forcefully or work more than minimally on vibrating tools.

(A.R. 20). The ALJ found that plaintiff's subjective complaints were not fully credible. (A.R. 20-23). Plaintiff was unable to perform any past relevant work. (A.R. 23). Plaintiff was 38-years-old as of the date of his alleged onset of disability and 41-years-old on the date of the ALJ's decision. Thus, at all times relevant to his claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 23). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 23). The ALJ found that the transferability of job skills was not material to a determination of disability. (A.R. 23-24). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age,

and with his RFC, education, and work experience, the VE testified that there were more than 10,000 jobs in Indiana that the hypothetical person would be capable of performing. (A.R. 58-60). The ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 24-26).

**1.**

Plaintiff argues that the ALJ "erred at the first half of Step Three by failing to consult a medical expert before determining the claimant's combined impairments did not equal the intent of Listing 1.04A." (Plf. Brief at 11-16; Reply Brief at 1-4). The administrative finding whether a claimant meets or equals a listed impairment is made at step 3 of the sequential analysis.[3] See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Step-3 regulates a "narrow category of adjudicatory conduct." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* "Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the [Social Security Administration's]

---

[3]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

SSA's special list of impairments, or that is at least equal in severity to those listed. The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. A person with such an impairment or an equivalent, consequently, necessarily satisfies that statutory definition of disability." *Id.* at 643 (internal citations omitted). It is well established that a claimant has the burden of demonstrating that he satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125.

Plaintiff had a history of lumbar surgeries in 2003 and 2004, and a cervical laminectomy in 2008. No medical records generated in connection with those surgeries were presented in support of his present claims for DIB and SSI benefits in which he claims an August 1, 2008, onset of disability. The ALJ noted plaintiff's history of unsuccessful applications for social security benefits:

> This is the claimant's fifth application for benefits. He previously applied for benefits in 2002, 2003, 2008 and 2009. The claimant appealed his 2003 determination to the hearing level, where his case was dismissed due to abandonment. The claimant has not been found disabled at any time previously.

(A.R. 16).

The ALJ carefully considered plaintiff's attorney's argument that plaintiff met or equaled the requirements of listing 1.04(A):

> ALJ: . . . Are you contending that a listing impairment is met or equaled?
>
> ATTY: Yes, Your Honor.
>
> ALJ: Which listing?
>
> ATTY: 1.04.
>
> ALJ: And what exhibits do you contend establish that?

>ATTY:    Specifically Exhibit -- on the record it's Neurosurgery of Kalamazoo at Borgess.
>
>ALJ:     And that is going to show me neural anatomic distribution of pain, limitation of motion in his spine, motor loss, atrophy with associated muscle weakness -- or accompanied by sensory or reflex loss and if the low back positive straight leg raising?
>
>ATTY:    Yes, Your Honor.
>
>ALJ:     Okay, thank you. Just to check, that's 1.04A that you are contending?
>
>ATTY:    Yes, Your Honor.

(A.R. 37).

>Listing 1.04(A) requires the following:
>
>1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A); *see Lawson v. Commissioner*, 192 F. App'x 521, 529-30 (6th Cir. 2006); *Young v. Colvin*, No. 1:13-cv-1696, 2014 WL 4301765, at * 10-11 (N.D. Ohio Aug. 29, 2014).

Plaintiff presented little medical evidence in support of the claims for DIB and SSI benefits now under appellate review. The ALJ found that plaintiff did not meet or equal the requirements of any listed impairment, including Listing 1.04(A):

>Despite the claimant's diagnosed impairments, the medical evidence does not document listing level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, either individually or in combination. In

making this finding, I considered Medical Listings 1.02 (Major Dysfunction of a Joint) and 1.04 (Disorders of the Spine).

The criteria of listing 1.02 has not been met or equaled because the record does not document a gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s), with involvement of one major peripheral weight-bearing joints, resulting in an inability to ambulate effectively, or involvement of one major peripheral joint in each upper extremity, resulting in an inability to perform fine and gross movements effectively. Medical testing has not shown results that reach the listing level severity; the claimant is able to ambulate effectively; and his bilateral dexterity is unimpaired.  Specifically, at a physical consultative examination, the claimant's gait and station were reported to be normal, he did not require the use of an assistive device, and he was able to pick up a coin, button his clothing and open a door (Exhibits 7F; 9F; 12F).

While the claimant's attorney argues that the claimant meets or equals listing 1.04A, the medical evidence does not support listing level findings, either in the medical imaging or in the ability ambulate.  In order to meet listing 1.04, the objective medical evidence must show the claimant has a disorder of the spine that compromises a nerve root or the spinal cord, with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).  These criteria have not been met. Nor does the claimant meet or equal Listing 1.04B or C, or any other listed impairment.

At the hearing, the claimant's representative contended that Exhibit 3F established that the requirements of Listing 1.04A were met or equaled.  Exhibit 3F consists of the results of electrodiagnostic testing conducted in December 2009.  While those tests indicate the presence of cervical radiculopathy and mild carpal tunnel syndrome, they do not establish the findings set forth in Listing 1.04A.  Additional records from the same facility similarly fail to satisfy the requirements of Listing 1.04A. (Exhibit 9F).  The record does document some mild loss of cervical ranges of motion, and at times examinations have indicated varying deficits concerning the claimant's upper extremities (Exhibit 1F, 4F, 5F, 7F). Nevertheless, the undersigned concludes that these findings were not consistently reported over a continuous twelve-month period, nor, based on the medical evidence in the record as a whole, did they rise to a level sufficient to be considered presumptively disabling at the third step of the sequential evaluation process.

Treating neurosurgeon, Mark Meyer, M.D., interpreted MRI studies as revealing no significant nerve root compromise (Exhibit 9F).  Dr. Meyer described a lumbar x-ray as showing degenerative disc disease with no instability, and a lumbar MRI with multilevel degenerative disability disease, a congenitally narrow canal throughout, some stenosis at the

      thoracolumbar junction, but no cord compression; and some central canal stenosis at the lumbar region, without significant nerve root compression. At a consultative examination, the claimant's gait and station were noted to be normal (Exhibit 7F). In fact, in December 2010, the claimant's treating physician, Jerold Chip, M.D., noted that the claimant's physical examinations had been unremarkable, with the exception of tenderness over the claimant's spine (Exhibit 11F/2). Additionally, regarding the claimant's ability to work, Dr. Meyer commented that he did "not have an objective explanation for why he could not do at least sedentary activity" (Exhibit 12F/15).

The ALJ's finding that plaintiff did not meet or equal the requirements of any listed impairment, including listing 1.04(A), is supported by more than substantial evidence.

      Plaintiff argues that the ALJ "erred by failing to consult a medical expert before determining that the claimant's combined impairments did not equal the intent of Listing 1.04A." This argument is meritless. "The claimant has the burden at the third step of the sequential evaluation to establish that he meets or equals a listed impairment." *See Roby v. Commissioner*, 48 F. App'x 532, 536 (6th Cir. 2002) (citing *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)); *see also Robinson v. Commissioner*, No. 13-cv-11637, 2014 WL 3528434, at * 15 (E.D. Mich. July 16, 2014). This means that plaintiff must present medical findings showing symptoms or diagnoses equal in severity and duration "to *all* the criteria for the one most similar listed impairment." *Daniels v. Commissioner*, 70 F. App'x 868, 874 (6th Cir. 2003); *Robinson v. Commissioner*, 2014 WL 3528434, at * 15. The ALJ was not required to consult with a medical expert before making his finding that plaintiff did not meet or equal the requirements of a listed impairment. *See Stevens v. Commissioner*, No. 1:12-cv-977, 2014 WL 357307, at * 5-6 (W.D. Mich. Jan. 31, 2014). Federal regulations allow an ALJ to call a medical expert to explain medical records but do not require him to do so. 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii); *see O'Neill v. Colvin*, No. 1:13-cv-867, 2014 WL 3510982, at * 17-18 (N.D. Ohio July 9, 2014); *Wredt ex rel. E. E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at * 7 (E.D. Tenn. Jan. 23, 2014).

**2.**

Plaintiff argues that the ALJ erred by failing to "specifically articulate a reason for discounting claimant's testimony." (Plf. Brief at 16-19; Reply Brief at 4-9). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

When the ALJ inquired why plaintiff felt that he was unable to work, plaintiff's response was that "doctors" had told him that he should not work any more "due to the arthritis and my problems with my spine". (A.R. 40-41). Suffice it to say that the ALJ was not persuaded when plaintiff claimed that Dr. Meyer, his treating neurosurgeon, had told him that he should not work:

> Q   Which doctors would that be?
>
> A   Dr. Terry Thomas from the Anesthesiology Pain Clinic[4] and I've had my surgeon, Dr. Meyer[], my Borgess in Kalamazoo.
>
> Q   Now, I'm showing, I'm looking at Exhibit 12F, page 15 and on March 4, 2010, Dr. Meyer[] says I do not have an objective explanation for why he could not do at least sedentary work. Sedentary activity. That's the same Dr. Meyer[] and that's Neurosurgery of Kalamazoo, and that's the same Dr. Meyer[] that you say told you you[ are] best off not working?
>
> A   Yes.

---

[4]Mr. Thomas is a physician's assistant at Kalamazoo Anesthesiology Pain Clinic (KAPC). Thomas saw plaintiff on at least two occasions. (A.R. 279, 297). There is nothing in the records from KAPC suggesting that Physician's Assistant Thomas or anyone else at the clinic offered an opinion that plaintiff should not work. (A.R. 222-29, 273-300). Even assuming that Mr. Thomas had offered such an opinion, it would not have been entitled to any particular weight because a physician's assistant is not an acceptable medical source, and the issue of disability is reserved to the Commissioner. 20 C.F.R. §§ 404.1513(a), (d), .1527(d)(1), (3), 416.913(a), (d), .927(d)(1), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Washington v. Commissioner*, No. 1:12-cv-1158, 2014 WL 3694146, at * 5 (W.D. Mich. July 23, 2014).

(A.R. 41). The ALJ found no support for plaintiff's testimony claiming that his treating surgeon had told him not to work. (A.R. 23). Although the ALJ's discussion of plaintiff's credibility is relatively brief (A.R. 20-23), it was adequate for purposes of appellate review, and the ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

**3.**

Plaintiff argues that the ALJ erred "by failing to properly evaluate Dr. Meyer's opinion." (Plf. Brief at 19-22; Reply Brief at 9-10). The hearing transcript and the ALJ's opinion make pellucid that the ALJ was aware of the fact that Dr. Meyer was plaintiff's treating neurosurgeon.[5] (A.R. 20, 41). The ALJ's opinion reflects his careful consideration of the records from Dr. Meyer that plaintiff presented in support of his claims for DIB and SSI benefits:

> The claimant received treatment from Mark Meyer, M.D., at Neurosurgery of Kalamazoo at Borgess, where, in January 2010, the claimant complained of chronic neck pain, bilateral extremity pain, left leg pain and severe carpal tunnel syndrome. The claimant was sent for a series of x-rays. Upon review of the medical imaging, Dr. Meyer described the results of a lumbar x-ray as showing degenerative disc disease with no evidence of instability; a lumbar MRI was described as demonstrating multilevel disc disease, and a congenitally narrow canal throughout, some stenosis at the thoracolumbar junction, but no cord compression; and some central canal stenosis at the lumbar region, without significant nerve root compression (Exhibit 12F/15). Dr. Meyer noted that the results of the EMG showed only mild carpal tunnel syndrome, which was inconsistent with the claimant's report. Dr. Meyer commented that there was no surgical remedy for the claimant's ongoing pain. The claimant was referred to a pain management program. Regarding the claimant's ability to work, Dr. Meyer commented that he did not "have an objective explanation for why he could not do at least sedentary activity." The claimant has not returned to Dr. Meyer for any treatment, although the record indicated he may have a surgical re-evalution scheduled for May 2011 (Exhibit 12F).

---

[5]Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).

(A.R. 21-22). The ALJ gave great weight to the treating neurosurgeon's opinion that plaintiff was capable of performing "at least" sedentary work:

> Regarding the opinion evidence, I give great weight to treating neurosurgeon, Mark Meyer, M.D., who opined that the claimant would be able to perform "at least" sedentary work activity (Exhibit 12F/16). Dr. Meyer's opinion is valued because of his medical specialty and his treating relationship with the claimant. I find Dr. Meyer's opinion is well supported by the objective medical evidence, it is consistent with his own treatment records, with the progress notes of Dr. Chip, with the consultative examination, and the medical evidence as a whole (Exhibit 12F, Social Security Ruling 96-2p).

(A.R. 23).

Plaintiff argues that the ALJ's consideration of Dr. Meyer's opinion was deficient because the ALJ "cherry picked" portions of Dr. Meyer's March 4, 2010, treatment note, and "improperly assumed that Dr. Meyer[] understood the definition of sedentary work as defined by the Social Security Administration." The court finds no merit in these arguments.

The ALJ gave appropriate consideration to Dr. Meyer's progress notes. On March 4, 2010, plaintiff returned to Dr. Meyer's office. (A.R. 286-87). Plaintiff continued to complain of severe back and neck pain. Dr. Meyer noted that plaintiff's lumbar x-rays showed degenerative disc disease with no evidence of instability. His lumbar spine MRI shoed multilevel degenerative disc disease, and a congenitally narrow canal throughout. At the thoracolumbar junction, there was some evidence of stenosis, but no cord compression. At the lumbar region, there was central canal stenosis without significant nerve root compression. (A.R. 286). Dr. Meyer offered his opinion that plaintiff would be able to do "at least" sedentary work:

> At this point in time, I do not feel that I have any further surgical procedures which would be of benefit. The patient is concerned about his ability to work, and does not feel that he can hold any job at the present time. I do not have an objective explanation for why he could not do at least sedentary activity; though, I could certainly understand where he would not be able to do anything more than that. He apparently has been denied disability in the past. I have explained that this is beyond my control; and, that certainly he is free to reapply, as

> he does not feel that he can work in his present situation. I do not feel that I have any surgical remedy for his ongoing spine pain.
>
> He mentioned that Dr. Mahmood had told him he had severe carpal tunnel syndrome. This would not be consistent with his current complaints to me of spine pain; and, I do note that there is a previous EMG from December 2009, which showed only mild carpal tunnel syndrome. I do not think surgical treatment of this would affect his primary complaints to me; so, again, I do not feel I have anything further to offer at this point. I think he would be best managed in a pain management program, and have offered him referral for this.

(A.R. 287). Contrary to plaintiff's assertions, Dr. Meyer did not offer an opinion that plaintiff could not perform light work. He merely indicated that he could understand plaintiff's claim that he could not perform work at the light exertional level. He did not adopt such a restriction. When plaintiff stated that he did not feel that he was capable of performing any job, his treating physician disagreed, noting the lack of objective evidence supporting such an extreme restriction. Plaintiff was "at least" capable of performing sedentary work. Whether he was capable of performing more than that was a closer question.[6] RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Brannon v. Commissioner*, 539 F. App'x 675, 677 (6th Cir. 2013); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). The ALJ considered Dr. Meyer's opinion that plaintiff was capable of at least sedentary work and the "progress notes of Dr. Chip, [] the consultative examination, and the medical [] evidence as a whole" and found that plaintiff was capable of performing a limited range of light work. (A.R. 20). The ALJ's factual finding is supported by more than substantial evidence.

---

[6] It should be noted that the ALJ's factual finding regarding plaintiff's RFC restricted plaintiff to lifting a maximum of 10 pounds (A.R. 20), rather than the 20 pound maximum that would have applied if plaintiff had been capable of performing a full range of light work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff's argument that the ALJ "improperly assumed that Dr. Meyer[] understood the definition of sedentary work as defined by the Social Security Administration" (Plf. Brief at 21) is not supported by any legal authority. Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see also Moore v. Commissioner*, No. 13-6654, __ F. App'x __, 2014 WL 3843791, at * 3 (6th Cir. Aug. 5, 2014). Even assuming that plaintiff did not waive the issue, it is meritless. It was not improper for the ALJ to assume that a treating neurosurgeon would have some familiarity with the requirements of sedentary and light work as defined by the Social Security Administration. If plaintiff actually believed that Dr. Meyer was unfamiliar with relevant standards, it was up to him to present evidence supporting that belief, and then attempt to persuade the ALJ that the opinion of the plaintiff's treating neurosurgeon should be given less weight.

**4.**

Plaintiff argues that the ALJ "impermissibly played doctor by concluding that the claimant [could] sustain the exertional and manipulative demands of work activity without consulting a medical expert." (Plf. Brief at 22-23; Reply Brief at 10-11). Plaintiff is incorrect. 'The Social Security Act instructs that the ALJ -- not a physician -- ultimately determines a claimant's RFC" and "an ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Commissioner*, 391 F. App'x 435, 439 (6th Cir. 2010).

## Conclusion

For the reasons set forth herein, the Commissioner's decision will be affirmed.

Dated: October 2, 2014  /s/ Phillip J. Green
United States Magistrate Judge